UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **MARK HANNA** <br> **LA. DOC #132872** <br> VS. | **CIVIL ACTION NO. 3:10-cv-1059** <br><br> **SECTION P** <br><br> **JUDGE ROBERT G. JAMES** |
| **MARK SHUMATE, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

### REPORT RECOMMENDING DISMISSAL OF
### SOME BUT NOT ALL OF PLAINTIFF'S CIVIL RIGHTS CLAIMS

*Pro se* plaintiff Mark Hanna, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on June 14, 2010. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is currently incarcerated at the Caldwell Correctional Center, Grayson, Louisiana; however, when he filed this complaint he was incarcerated at the Claiborne Corrections Center and he complained of circumstances and conditions that arose during his imprisonment at the East Carroll Detention Center (ECDC) and Riverbend Detention Center (RBDC). He sued the East Carroll Parish Sheriff's Department, East Carroll Parish Sheriff Mark Shumate, ECDC and RBDC Wardens Alvin Jones and Ronnie Harris, the ECDC, the RBDC, and various corrections officers. He prayed for compensatory damages.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that plaintiff's claims that he was denied due process with regard to his placement in lock-down, that he was denied his right of access to the courts, and, his claims that excessive force was used against his fellow inmates, all be **DISMISSED WITH**

**PREJUDICE.** Plaintiff's claim that he was the victim of excessive force should survive this initial review and, in a separate order, the undersigned has directed service of process.

*Background*

On June 14, 2010, plaintiff filed a 32- page type-written complaint setting forth his civil rights claims in 144 paragraphs; thereafter, on August 20, 2010, he supplemented the complaint with a 4-page hand-written amendment. Plaintiff complained that he was the victim of unnecessary and excessive force, that he was confined to a lock-down cell without due process, and that he was and is denied the right of access to the courts. In the original complaint and in the supplemental complaint he also alleged that excessive force has been used against his fellow inmates.

*1. Unnecessary and Excessive Force*

   *a. Events at ECDC*

In June 2009, plaintiff was incarcerated at the ECDC. On June 14, 15, 16, and 17 he submitted written and verbal requests to Lt. Deshawn Lee and Captain Greg Williams asking to be transferred to another bed because of problems he was having with the occupant of the lower bunk, an inmate named Muse. [Doc. #1, ¶27-28]

On June 18, 2009, plaintiff asked Muse to move so that plaintiff could make his bed; when Mused refused to move plaintiff, "... had to throw the blanket over the edge of the top rack on his head... [and] ...had to reach over him to tuck the blanket, exposing [his] ribcage to him at close range." Approximately 90 minutes later plaintiff went to the acting Warden Harris's office and asked him to be moved to another bed; Harris indicated that he would do so that day. [*Id.*, ¶28-29]

That afternoon, plaintiff was escorted to the front office where he met with Captain Williams and Lt. Lee and other officers whose names plaintiff does not know. Plaintiff related his problem

2

to these officers and again requested a different bed. Williams and Lee summoned Muse to the front office and confronted him with plaintiff's accusations. Muse accused plaintiff of stepping on his toe and using racial epithets. Lee and Williams advised that plaintiff should not have expected Muse to move and, since this incident generated hostility, plaintiff was transferred to RBDC. [*Id.*, ¶30-37]

### b. Events at RBDC

Plaintiff arrived at RBDC that same afternoon; his property was confiscated by Asst. Warden Shaw, Capt. Brooks, and Lt. Thompson. Plaintiff was placed in J-cell of the lock-down cell-block. According to plaintiff, RBDC ordinarily does not confiscate the property of non-disciplinary cellblock prisoners. [*Id.*, ¶38-39]

On June 20, 2009, Cadet Turner transferred plaintiff to L-cell. This cell was already occupied by seven other inmates who were serving disciplinary sentences for various offenses. (According to plaintiff, no disciplinary charges had been lodged against him at this time.) Since the cell was designed to house four inmates, plaintiff and three other inmates were required to sleep on mattresses on the floor. According to plaintiff, four of the inmates in L-cell were Black Muslims who were acquainted with inmate Muse who is "a prominent member of the Muslim community at ECDC." Somehow these inmates discovered that plaintiff was transferred to RBDC because of his problems with Muse and they placed plaintiff's clothing, hygiene products, and mattress by the cell door and told plaintiff to leave the cell or "there would be violence committed against" him. Plaintiff asked Cadet Turner to move him because of these threats but Turner refused. Ten minutes later, plaintiff fled L-cell when the door was opened for laundry call; once out of the cell, plaintiff refused to abide by Turner's order to return. [*Id.*, ¶40-47]

Plaintiff was then escorted to the adjacent interlock room. According to plaintiff, Turner hit

plaintiff in the face with his fist and defendant "Roe" picked plaintiff up and slammed him to the floor breaking his collarbone. Plaintiff also claimed that when he "... refused to reenter the L-cell at the RBDC lock-down cellblock, the defendants Turner and Roe failed to attempt to handcuff [him], they failed to calmly assess the situation, and they were delinquent in escorting [him] to the remote interlock room outside the view of video cameras, there was no high ranking officer on duty, and /or the defendants Turner and Roe failed to summon that officer, and /or that officer failed or refused to arrive when summoned, because the defendants Turner and Roe had not been adequately trained supervised, or disciplined by the defendants, ECSO, Mark Shumate, or RBDC, Jones or Shaw." [*Id.*, ¶48-58]

Plaintiff was taken to the E. A. Conway Hospital in Monroe where an x-ray examination confirmed that his right clavicle was fractured. According to plaintiff, no disciplinary charges were lodged against plaintiff at that time for the incident that resulted in the injury to his clavicle. Nevertheless, Cadet Turner did file a disciplinary report on June 20th charging plaintiff with Aggravated Disobedience and alleging, "... on the above date (6/20/09) and approximate time (8:25 a.m.) Offender Mark Hanna bolted from cellblock-L during laundry pickup. Offender Hanna then refused to re-enter his assigned cell after being instructed several times by myself, C/O Henry Turner. A disciplinary report was issued." [*Id.*, ¶51]

According to plaintiff, defendants Turner, Shaw and Roe have denied that the alleged incident in the interlock room ever occurred and contend instead that plaintiff injured his collarbone when he fell down on June 20, 2009. [*Id.*, ¶52]

With regard to the excessive force claim plaintiff contends, "The defendants, Turner and Roe, without provocation on my part or justification, physically attacked and terrorized and injured me

4

with unnecessary and excessive force ... in violation of my rights secured in the ... Eighth Amendment ..." [*Id.*, ¶57]

### *2. Confinement in Lock-Down Without Due Process*

Upon plaintiff's return from the E. A. Conway Hospital on June 20, 2009, he was transferred to the A-cell at the RBDC lock-down cellblock. That cell was equipped with two beds and since both were occupied, plaintiff was once again required to sleep on his mattress on the floor. According to plaintiff, one of his cell mates was being housed in the cellblocks pending disciplinary charges of alleged homosexual activity; the other inmate was under medical quarantine because of a positive tuberculosis test. On June 26, 2009, these two inmates were released from A-cell and another inmate was admitted on medical-injured status. [*Id.*, ¶74]

On the same date, many of the inmates housed in the lock-down cellblock were released early to their dormitories in order to make space to house a number of pre-trial detainees. Plaintiff remained in lock-down cellblock and the presence of these pretrial detainees resulted in overcrowded conditions. [*Id.*, ¶78-79]

On June 26, 2009, plaintiff "was allowed to make commissary at the RBDC"; however, he was not allowed to make any purchases because the commissary computer indicated that his "inmate account was in disciplinary status." [*Id.*, ¶62]

Disciplinary hearings scheduled for June 22 and then June 25, 2009 were continued to permit further investigation. On June 26, 2009, the hearing was convened and at its conclusion plaintiff was found guilty of Aggravated Disobedience and Defiance and sentenced to 25 days cell confinement. [*Id.*, ¶63-66]

On June 29, 2009, another inmate was admitted to A-cell even though he was not medically

injured as were plaintiff and the other occupant of A-cell. On the same date defendants Shaw, Brooks, Roe, and Turner attempted to engage plaintiff in an argument concerning the seriousness of plaintiff's injuries. [*Id.*, ¶84-86]

On June 30, 2009, plaintiff was released from the cellblock even though he had not completed the disciplinary sentence that was previously imposed. [*Id.*, ¶87]

With regard to this claim, plaintiff has articulated his theory of liability as follows: "The initial placement of myself into the RBDC lock-down cellblock J-cell and/or the subsequent movement of myself from there to the L-cell, and/or the placement of my inmate account into disciplinary restrictions status without first having established a disciplinary conviction for it, and/or the initiation and prosecution of disciplinary charges against me and sentencing to 25-days of cell-confinement without a documented investigation, and/or the physical attack and terrorizing of myself with unnecessary and excessive force ... were instituted and inflicted as a form of punishment in response to myself reporting the problem I had with Muse to prison officials and seeking their assistance in avoiding inmate violence." [*Id.*, ¶67]

He also claimed that "training, supervision, discipline, and counseling for the RBDC and ECDC employees..." was inadequate. [*Id.*, ¶90]

### 3. Access to Courts

On August 19, 2008, plaintiff filed a *pro se* civil rights complaint alleging that he had been erroneously convicted of a prison disciplinary rules infraction in January 2003 while he was incarcerated at the Winn Corrections Center, and that this conviction resulted in the forfeiture of accrued good time credits. This complaint was ultimately assigned to the Alexandria Division of this Court. [*See Mark Hanna v. Delmer Maxwell, et al.*, No. 1:08-cv-1230 at Doc. #1] On March

6

27, 2009, United States Magistrate Judge James D. Kirk completed an initial review of plaintiff's complaint and directed plaintiff to amend to provide various documents associated with his claim, namely, copies of the prison documents associated with the 2003 disciplinary rules violations along with copies of the administrative requests and judicial appeals lodged with the Department of Corrections and the Nineteenth Judicial District Court, the First Circuit Court of Appeals, and the Louisiana Supreme Court. [*Id.*, at Doc. #12]

Apparently plaintiff neglected to save copies of these documents and therefore he corresponded with the various courts in order to obtain the pleadings and orders associated with that litigation. [Doc. #1, ¶92-104] In due course, on May 21, 2009, he received an "unsealed manila envelope with copies of documents in it from the 19th JDC. There was no clerks' letter enclosed, the documents were shuffled, and it appeared that some documents were missing from it." [*Id.*, ¶95]

Thereafter, plaintiff, with the assistance of an acquaintance, obtained the various documents and on April 16, 2009, he filed an objection to the order directing him to amend his complaint. [*See* 1:08-cv-1230 at Doc. #14] In addition, plaintiff requested a copy of the United States Supreme Court's decision in *Jones v. Bock*, 549 U.S. 199 (2007); he received this document on June 29, 2009, and on August 14 and August 25 he filed "additional delayed response[s]" to the amend order. [1:08-cv-1230 at Docs. # 28-29] [Doc. #1, ¶106-118]

On September 2, 2009, Magistrate Judge Kirk recommended dismissal of plaintiff's complaint for failing to state a claim for which relief might be granted. [1:08c-v-1230 at Doc. #30] On September 23, 2009, plaintiff submitted a 62- page hand-written objection; on October 22, 2009, he submitted an 87- page hand-written amended objection; and, on October 30, 2009, he filed an additional exhibit in support of his objection. [1:08-cv-1230 at Docs. #34, 35, and 36] On December

x

3, 2009, United States District Court Judge Dee D. Drell adopted the Magistrate Judge's Report and Recommendation and dismissed plaintiff's complaint with prejudice for failing to state a claim for which relief might be granted. [1:08-cv-1230 at Doc. #38] Plaintiff appealed the judgment and his appeal is pending before the United States Fifth Circuit Court of Appeals. *See Hanna v. Maxwell*, Docket No. 10-30053. On June 9, 2010, plaintiff submitted a 39-page typewritten brief in support of his claims; thereafter, on July 26, 2010, plaintiff submitted a 9-page hand-written motion to correct typographical errors in his appeal brief, along with what appears to be a 39-page typewritten corrected version of his appeal brief.

In the instant suit, plaintiff complained that he was denied access to his "... legal materials and effects, including pens, pencils, paper, envelopes, stamps, and court documents..." during his stay at RBDC's lock-down from June 18, 2009, to June 30, 2009, the date he was released from the cellblock. [*Id.*, ¶121-125]

Plaintiff complained that the RBDC law library is inadequate because it is not equipped with federal case laws; he complained that the ECDC law library is inadequate because the federal case law is more than 15 years old. [*Id.*, ¶126-131]

He also complained that the defendants Loe and Soe's "...withholding and /or intercepting [his] incoming and /or outgoing legal mail, and / or in failing to timely deliver [his] legal mail to [him], and /or in failing to timely assist [him] in purchasing copies of court documents with [his] inmate funds ... have effected inordinate delay, difficulty, and obstruction of [his ability to maintain] the civil action CV-08:1230, and as a result [he] was unable to comply with the court's set time-limit in producing copies of documents..." [*Id.*, ¶132] He also maintained that these deficiencies were attributable to the operators or wardens and Sheriff Shumate. [*Id.*, ¶133]

8

### 4. *Allegations of Excessive Force Involving Other Inmates*

In addition to the foregoing allegations, plaintiff has also alleged: (a) on March 29, 2009, ECDC was raised by agents of the LDOC who seized cell phones, marijuana, cash, and weapons from the inmate population which all resulted in the firing of then Warden John Gunter [*Id*., ¶ 71]; (b) on March 30, 2009, RBDC was raided and Warden Jones was arrested and charged with malfeasance in office [*Id*., ¶72]; (c) many of the defendants were employed at ECDC and RBDC when these raids occurred and they remained employed after the events of March 29-30 [*Id*., ¶ 73]; (d) on July 13, 2009, defendant Lee was suspended from employment after he engaged in a fist fight with another employee who had implicated Lee in a tobacco smuggling enterprise at ECDC. [*Id*., ¶140]

In the supplemental complaint filed on August 20, 2010, plaintiff alleged, (a) in July 2008 a corrections officer, "'John Roe' applied a martial arts wrist hold on inmate Rico Harris" breaking his arm [Doc. #7, ¶145]; (b) on July 4, 2010, "John Roe" kicked inmate Shaw in the rib cage [*Id*. ¶146]; (c) on December 16, 2009, Officers Burch, Bell, and Andrews physically attacked inmate Quinn and Roe sprayed Quinn with chemical mace and then confined Quinn in lock down, in the dark, without access to telephone, postal services, or supplies until December 24 [*Id*., ¶147]; (d) on March 15, 2010 Captain Knight and Sgt. Gilmore attacked inmate Quinn without provocation and Lt. "Toe" used a Tazer on the inmate and then placed the inmate in the cell block for a period of days [Id., ¶148]; (e) on June 30, 2010, Bell, Bunch, and Brooks sprayed inmate Broussard in the face with chemical mace and confined him in lock down in complete darkness for two days [*Id*., ¶149]; (f) on July 4, 2010, Bunch and Maudin attacked inmate Broussard and placed him in lock down for 3 days; [*Id*., ¶150]; (g) contrary to policy, no reports were written up by the corrections officers [*Id*., ¶151];

(h) grievances were filed in each instance by the prisoners and in each instance the prisoner received no response to his grievance [*Id.*, ¶152]; (i) each instance demonstrates inadequate training, supervision, or discipline for officers employed at ECDC and RBDC [*Id.*, ¶153].

### *Law and Analysis*

#### *1. Screening*

Plaintiff has been allowed to proceed *in forma pauperis*. When a prisoner sues an officer or employee of a governmental entity in a civil rights complaint, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *see also Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad

discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint alleges facts sufficient to conduct and conclude a preliminary screening pursuant to §1915 and §1915A. Accepting all of plaintiff's allegations as true, the undersigned concludes, for the reasons stated hereinafter, his complaint, insofar as he complains about his placement in lock-down, the denial of his right of access to the courts, and excessive force by corrections officers against other inmates, should be dismissed with prejudice as frivolous and for failing to state a claim for which relief may be granted.

**2. Due Process**

Plaintiff claims that his due process rights were violated when he was placed in administrative segregation. This allegation, taken as true for the purposes of this Report, fails to state a claim for which relief might be granted pursuant to 42 U.S.C. § 1983. This is so because "[t]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The federal jurisprudence holds, that while the states may under certain circumstances create rights that implicate Due Process, such rights are limited to freedom from

restraints that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Thus, relying on *Sandin*, the Fifth Circuit has found that "'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir.1996) (quoting *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995)) (rejecting claim that confinement in administrative segregation violated prisoner's due process rights). The Fifth Circuit has also rejected a state prisoner's claim that the additional restrictions – such as loss of commissary, television, or telephone privileges – imposed on those in administrative segregation violated his due process rights. *See Martin v. Scott*, 156 F.3d 578, 580 (5th Cir.1998) (*per curiam*)(absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for constitutional claim because it simply does not constitute a deprivation of a constitutionally cognizable liberty interest.).

In other words, when a prisoner is lawfully incarcerated, he loses by virtue of his confinement, many of the rights and privileges that most citizens enjoy. *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir.1997). Thus, "... mere[ ] changes in the conditions of [ ] confinement ... do not implicate due process concerns." *See Madison*, 104 F.3d at 768; *see also Harper v. Showers*, 174 F.3d 716, 718 (5th Cir.1999) ("Inmates have no protectable property or liberty interest in custodial classifications."). Plaintiff's confinement in lock down for such a relatively short period did not amount to an "atypical" hardship and therefore, insofar as he complains about that confinement, his claim is frivolous.

*3. Access to Courts*

Plaintiff also claimed that he was denied his right of access to the courts. "It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999); *See Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821; *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).

Plaintiff has been unfettered in his ability to litigate the instant lawsuit. As shown above, he has been permitted to file a lengthy original complaint on June 14, 2010 (Doc. #1); a notice of change of address on August 20, 2010 (Doc. #6); a supplemental complaint on August 20, 2010 (Doc. #7); and, a motion to proceed in forma pauperis on September 3, 2010 (Doc. #9).

In addition, plaintiff has freely litigated the prior civil rights action, filing numerous complex pleadings . See *Mark Hanna v. Delmer Maxwell, et al.*, No. 1:08-cv-1230 at Doc. #1 (23-page original complaint filed on August 19, 2008); Doc. #4 (Motion to Proceed In Forma Pauperis filed on August 27, 2008); Doc. #7 (2-page letter requesting case status filed on January 28, 2009); Doc. #8 (Notice of Change of Address filed on February 19, 2009); Doc. #9 (Motion for Service filed on

13

March 4, 2009); Doc. #11 (Notice of Change of Address filed March 17, 2009); Doc. #13 (Amended Complaint filed April 16, 2009); Doc. #14 (Objection to Memorandum Order filed April 16, 2009); Doc. #15 (Motion to Stay Proceedings filed April 16, 2009); Doc. #17 (Motion to Amend filed on April 22, 2009); Doc. #19 (Amended Complaint filed on April 23, 2009); Doc. #20 (Notice of Change of Address filed on April 24, 2009); Doc. #21 (Objection, filed on April 22, 2009); Doc. #22 (Motion for Extension of Time filed on April 28, 2009); Doc. #24 (Response filed on May 27, 2009); Doc. #25 (Additional Partial Response filed on June 3, 2009); Doc. #26 (Response and Additional Amendments filed June 3, 2009); Doc. #27 (Notice of Change of Address filed on July 22, 2009); Doc. #28 (Additional Delayed Response filed August 14, 2009); Doc. #29 (Additional Delayed Response filed August 25, 2009); Doc. #31 (Motion for Extension of Time filed September 14, 2009); Doc. #32 (Request for Docket Sheets filed September 14, 2009); Doc. #34 (Objection to Report and Recommendation filed September 23, 2009); Doc. #35 (Amended Objection filed on October 22, 2009); Doc. #36 (Motion for Leave to Submit Exhibit filed on October 30, 2009); Doc. #39 (Notice/Letter filed December 4, 2009); Doc. #40 (Notice of Change of Address filed December 11, 2009); Doc. #42 (Notice of Appeal filed January 6, 2010); Doc. #43 (Amended Notice of Appeal filed on January 6, 2010); Doc. #46 (Motion to Proceed In Forma Pauperis on Appeal filed on January 25, 2010); Doc. #51 (Notice of Change of Address filed February 26, 2010); and, Doc. #55 (Notice of Change of Address filed on June 2, 2010).

Further, as noted previously, he has filed an appeal and submitted voluminous pleadings to the Fifth Circuit. *See Hanna v. Maxwell*, Docket No. 10-30053 – on June 9, 2010 , a 39-page typewritten brief in support of his claims; and, on July 26, 2010, a 9-page hand-written motion to correct typographical errors in his appeal brief, along with what appears to be a 39-page typewritten

corrected version of his appeal brief.

Clearly, plaintiff has not been thwarted in his ability to transmit legal documents to this court or to the Court of Appeals. Plaintiff's conclusory and self-serving allegations concerning deficiencies in the law libraries, lack of appropriate tools, and interference with the mail are insufficient to state a claim for which relief may be granted.

Furthermore, in order for plaintiff to state a claim that he was denied his constitutional right of access to the courts, he must "demonstrate[ ] that his position as a litigant was prejudiced by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "actual injury" is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. The Supreme Court, discussing the "actual injury" requirement held that: "The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355. The Court further held that this right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id.*

Plaintiff has not shown that he sustained any actual injury resulting from the circumstances he complained about. He maintains that his prior suit – *Mark Hanna v. Delmer Maxwell, et al.*, No. 1:08-cv-1230 – was erroneously dismissed when the Court *sua sponte* raised the affirmative defense of failure to exhaust administrative remedies; however, as shown above, that suit was dismissed because plaintiff failed to state a claim for which relief might be granted. In short, Plaintiff's access

to court claim should be dismissed as frivolous.

### *3. Excessive Force Claim*

Plaintiff's excessive force claim arose during his confinement at RBDC when he was struck by Defendant Turner and then slammed him to the floor by Defendant "Roe."According to plaintiff, this resulted in the fracture of plaintiff's collar bone. He ultimately claimed that Turner and "Roe" "... had not been adequately trained supervised, or disciplined by the defendants, ECSO, Mark Shumate, or RBDC, Jones or Shaw." [Doc. #1, ¶48-58]

Taken as true for the purposes of this Report, plaintiff clearly states an Eighth Amendment claim with respect to the actions of Defendants Turner and Roe. His claims against the supervisory officials – Sheriff Shumate, and Wardens Jones and Shaw – should also survive initial review. "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir.2001) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir.1987)). To establish §1983 liability against supervisors, the plaintiff must show that: (1) the supervisor failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir.2003).

Plaintiff's claims against the East Carroll Parish Sheriff's Office and Riverbend Detention Center, however, must be dismissed. Rule 17(b) of the Federal Rules of Civil Procedure provides that "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." See Fed.R.Civ.P. 17(b). Under Louisiana law, to possess the capacity to be sued, an entity

must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code art. 24 (2009).

The State of Louisiana grants no such status to any of its parish sheriff's office. *Liberty Mut. Ins. Co. v. Grant Parish Sherif's Dep't*, 350 So.2d 236 (La.Ct.App.1977), writ refused, 352 So.2d 235 (La.1977). Thus, none of the parish sheriff's offices are legal entities capable of suing or being sued. *Ruggiero v. Litchfield*, 700 F.Supp. 863, 865 (M.D.La.1988). Accordingly, the East Carroll Parish Sheriff's Office is not a juridical person capable of being sued under § 1983 or state law. Likewise, it does not appear that RBDC is a juridical person. Therefore, the claims brought against the Sheriff's Office and RBDC under § 1983 are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e).

### *4. Excessive Force Against Other Inmates*

Plaintiff complains of various instances where prison officials were accused of malfeasance and criminal activity. He also complained that excessive force was used by prison guards against his fellow inmates. Plaintiff lacks standing to assert the malfeasance claims and the general claims of excessive force with respect to inmates other than himself. To satisfy the standing requirement, a plaintiff must demonstrate: (1) an injury in fact; (2) that is traceable to the defendant's challenged conduct; and (3) that is likely to be redressed by a favorable decision of the district court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The injury must be "actual or imminent, not 'conjectural or hypothetical.' "*Id.* (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)). While the actions of the guards and prison officials, if true, are deplorable, plaintiff lacks standing to assert their claims. Of course, if he is able

to show that the prisoners involved in the other situations were similarly situated, he might be able to introduce evidence of mistreatment in seeking to establish his claim of inadequate training, supervision, and discipline against any supervisory defendants.

*Conclusion and Recommendation*

Therefore

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint, insofar as it claims a denial of due process, the denial of his right of access to courts, and, the use of excessive force against his fellow inmates be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

**<u>PLAINTIFF'S EXCESSIVE FORCE CLAIM AGAINST DEFENDANTS TURNER, "ROE," SHERIFF SHUMATE, WARDEN JONES and ASSISTANT WARDEN SHAW REMAIN VIABLE AND SERVICE OF PROCESS WILL BE ORDERED WITH RESPECT TO THESE DEFENDANTS IN A SEPARATE ORDER.</u>**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions**

**accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, September 22, 2010.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE